IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN A. MCLEOD,

    Plaintiff,

v.                                                 CASE NO. 4:15-cv-188-RH-GRJ

JULIE JONES, et al.,

    Defendants.

_____/

## REPORT & RECOMMENDATION

This case is before the Court on Defendants' Motion to Revoke Plaintiff's *in forma pauperis* status. (ECF No. 34.) Plaintiff has filed a response in opposition. (ECF No. 49.) Therefore, the motion is ripe for review. For the reasons discussed below, the undersigned recommends that Defendants' motion be granted.

### I. Background

Plaintiff is an inmate in the custody of the Florida Department of Corrections ("DOC"), currently housed at Jefferson Correctional Institution ("Jefferson CI"). On April 2, 2015, Plaintiff initiated this action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, and a motion for leave to proceed as a pauper. (ECF Nos. 1, 3.)

Plaintiff's allegations stem from a Hepatitis C infection that was diagnosed at Jefferson CI in October, 2014. Plaintiff asserts in Count One of the Complaint that the current and former Secretaries of the DOC (Michael Crews and Julie Jones), Corizon Health Inc., and individual Defendants violated his Eighth Amendment rights in

connection with a DOC rule implement by Secretary Crews that prohibited certain inmates from being issued a razor to shave, and instead required them to use shaving clippers. Plaintiff asserts that officials at the prison implemented the rule in such a way that the clipper blades were inadequately disinfected, thereby exposing Plaintiff and other inmates to infections, such as Hepatitis C. In Count Two, Plaintiff asserts that Corizon Health, Inc. (the prison's medical services contractor) and individual prison officials have been deliberately indifferent to his serious medical needs by failing to inform him of his Hepatitis C diagnosis and by failing to provide him with treatment.

On April 14, 2015, the undersigned recommended that Plaintiff's motion for leave to proceed as a pauper, ECF No. 3, be denied and the case be dismissed without prejudice for abuse of the judicial process by failing to truthfully disclose previous lawsuits and pursuant to the 28 U.S.C. § 1915(g) three-strikes bar. (ECF No. 7.) In making this determination the undersigned acknowledged that Plaintiff is barred from proceeding as a pauper in a civil action under the three-strikes bar unless he is in "imminent danger of serious physical injury." due to §1915(g)'s three-strikes bar. (*Id.*) The undersigned then concluded that the Complaint did not allege facts showing that Plaintiff is in imminent danger of serious physical injury because Plaintiff conceded that he is being monitored by the prison's chronic care clinic, though he disagrees with the course of treatment. (*Id.*)

On May 8, 2015, the Court declined to adopt the undersigned's report and recommendation. (ECF No. 10.) Specifically, the Court determined that Plaintiff had alleged imminent danger because Plaintiff alleged that he is not being treated at all,

noting that monitoring a condition is not always the same as treating it. (*Id.*) The Court further determined that the record did not refute the allegation that Plaintiff is receiving constitutionally inadequate treatment. (*Id.* ) Notably, the Court also explained that "[i]f, in due course, the record establishes that the plaintiff is not in imminent danger, leave to proceed *in forma pauperis* may be revoked," and "summary judgment may be granted for the defendants if, at some point, the record establishes without dispute that the plaintiff is receiving constitutionally adequate treatment." (*Id.* at 3.) The Court therafter granted Plaintiff's Motion for Leave to Proceed *in forma pauperis* on May 11, 2015. (ECF No. 11.)[1]

On July 13, 2015, Defendants filed the instant Motion to Revoke Plaintiff's *in forma pauperis* status. (ECF No.34.) In support of their motion, Defendants submitted a declaration of Defendant Alvia Varona, the current Medical Director at Jefferson CI (hereinafter, "Dr. Varona's Declaration"). *See* ECF No. 34-1. Defendants also submitted a copy of the "Interim Guidance for the Management of Chronic Hepatitis C Infection – Federal Bureau of Prisons Clinical Practice Guidelines" (hereinafter, "FBP Guidelines"). *See* ECF No. 34-2. Defendants argue that this evidence demonstrates that Plaintiff is not at any risk or in any imminent danger. (ECF No. 34 at 3.)

According to Dr. Varona's Declaration, there are two types of HCV infection: (1)

---

[1] On May 13, 2015, the undersigned recommended that the case be dismissed with respect to Defendants Crews, Jones, Speights, Hartsfield, Harvey, and Bowden for failure to state a claim upon which relief may be granted pursuant to § 1915A(b)(1). (Doc. 16.) The undersigned's recommendation of dismissal with respect to these six Defendants is still pending before the Court.

Acute, a short-term viral infection, and (2) Chronic, which may cause the liver to become inflamed and damaged. (ECF No. 34-1 ¶ 7.) Acute infection can be asymptomatic and 15-40% of people clear the virus through the actions of their immune systems. (*Id.* ¶ 8.) While approximately 60-85% of patients progress from the acute stage to the chronic stage, the chronic stage can also be asymptomatic, and nonetheless, the natural history of the effects of the chronic stage is generally slow. (*Id.* ¶¶ 8-9.)

Dr. Varona's Declaration explains that medical providers working in the DOC rely on the FBP Guidelines for HCV treatment and enroll inmate patients with chronic HCV infection in the CCC, where clinical evaluation and laboratory testing are completed regularly. (*Id.* ¶¶ 11-12.) Based upon the clinical evaluations and laboratory testing, inmate patients are prioritized for treatment based on the FBP Guidelines' recommendations. (*Id.* ¶ 13.) The FBP Guidelines note that treatment for HCV infection is prioritized based on clinical scenarios, including advanced hepatic fibrosis/cirrhosis, liver transplant recipients, HIV co-infection, comorbid medical conditions associated with HCV, and continuity of care for newly incarcerated BOP inmates who were being treated at the time of incarceration. (ECF No. 34-2 at 4.) The FBP Guidelines explain that although four new medications were approved for treatment of HCV in 2011, more are expected in the future due to the rapidly changing clinical guidelines and treatment recommendations. (*Id..*) Thus, "the most recently published guidance on HCV treatment (*www.hcvguidelines.org*) discloses that it is reasonable to postpone treatment for cases with less advanced fibrosis, pending the expected availability of better treatments in the

near future." (Id.)

As stated in Dr. Varona's Declaration, Plaintiff's "medical records disclose that he is being seen regularly in CCC, where he will be continuously monitored and evaluated," and Plaintiff's "laboratory results, including an ultrasound, testing of his liver enzymes, and platelet counts all reflect within normal limits." (ECF No. 34-1 ¶ 14.) Additionally, "nothing in inmate McLeod's records indicate that he has significant fibrosis for prioritization for treatment, or reflect that he meets the criteria for prioritization otherwise with respect to having a co-infection of HIV or of having had treatment prior to his incarceration." (Id. ¶¶ 14-15.) Dr. Varona further asserts that Plaintiff's "medical records have no indication that his HCV infection has progressed to a stage that treatment is required, or that it is life-threatening or poses a serious risk to his health." (Id. ¶ 16.) Moreover, Plaintiff's medical records reflect that his "HCV infection is being appropriately monitored, and Plaintiff "would [get] to timely receive treatment only based on his medical condition and his condition at this stage does not warrant treatment." (Id. ¶ 18.)

Dr. Varona's avers in his declaration that "HCV is an extremely slowly progressing disease," that "[t]here is currently no clinical indication that inmate McLeod is facing imminent danger or harm resulting from not receiving HCV treatment at this time," and that it is Dr. Varona's "medical opinion that not receiving treatment at this time will have no significant effect on inmate McLeod's HCV infection or his overall condition and health." (Id. ¶¶ 19-20.) Moreover, Dr. Varona asserts that Plaintiff's "medical needs were not and are not being ignored. Inmate McLeod's medical

treatment was appropriate and within the prevailing standard of care." (*Id.* ¶ 21.)

Plaintiff argues that he has "a serious medical need" due to his HCV infection and is "in need of medical treatment." (ECF No. at 13). Plaintiff further asserts that he has been denied medical treatment. ( *Id.* at 9, 14, 15.) In response to Defendants' Motion to Revoke, the only thing Plaintiff points to is Dr. Varona's Declaration, noting that the declaration "verifies the fact that Plaintiff is not being treated all." (ECF No.49 at 5.)

## II.  Discussion

The Prison Litigation Reform Act of 1995 ("PLRA") provides that a prisoner may not bring a civil action under 28 U.S.C. § 1915(g),

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

This is commonly known as the PLRA's "three-strikes" rule.  "A prisoner under imminent danger of serious physical injury can qualify for the 'imminent danger exception,'" but the prisoner must allege a present imminent danger.  *Miller v. Donald*, 541 F.3d 1091, 1095 (11th Cir. 2008); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999). Several courts have interpreted § 1915(g) as permitting courts to revoke a previously granted *in forma pauperis* ("IFP") status if it later becomes evident that the original IFP status should not have been granted. *See, e.g.*, *Magee v. Clinton*, No. 04-5247, 2005 WL 613248, at *1 (D.C. Cir. Mar. 14, 2005); *Smiley v. Parker*, 96 F. App'x 917 (4th Cir. 2004); *Adepegaba v. Hammons*, 103 F.3d 383 (5th Cir. 1996); *Daker v. Owens*, No.

5:12-cv-459(CAR), 2014 WL 1159629, at *1 (M.D. Ga. Mar. 21, 2014); *Davis v. Thomas Cnty. Sheriff's Dept.*, No. 6:06-cv-30(HL), 2006 WL 2567883, at *1 (M.D. Ga. Sept. 5, 2006). According to the Eleventh Circuit, once the IFP status is denied,

> the proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed in forma pauperis pursuant to the three strikes provision of § 1915(g). The prisoner cannot simply pay the filing fee after being denied in forma pauperis status. He must pay the filing fee at the time he initiates the suit.

*Dupree v. Palmer*, 284 F.3d 1324, 1236 (11th Cir. 2002).

Thus, the Court is authorized to revisit the issue of Plaintiff's IFP status. Plaintiff argues that the District Court "erred in determining the IFP status could be revoked," and that "binding precedent of the 11th Circuit Court of Appeals" prohibits the Court from revisiting the issue of imminent danger once imminent danger is pled and found as a threshold matter. *See* ECF No. 49 at 2-3. Plaintiff, however, fails to cite to any cases and the Court is not aware of any such binding precedent that would support Plaintiff's argument. While Plaintiff appears to interpret § 1915(g) as only permitting a court to assess imminent danger at the time the complaint is filed, the Eleventh Circuit has interpreted this to mean that the imminent danger must be present at the time the complaint is filed, not merely at a *prior* time. *See Medberry*, 185 F.3d at 1193. Thus, the Court is authorized to revisit the issue of Plaintiff's IFP status and the imminent danger exception to § 1915(g).

Plaintiff fails to offer any evidence that he is in imminent danger now or was at the time he filed his complaint. The only evidence Plaintiff points to in his response to Defendants' motion to revoke is Dr. Varona's declaration, which Plaintiff claims "actually

verifies the fact the Plaintiff is not being treated at all." (ECF No. 49 at 5.)

In contrast Defendants have offered ample (and unrefuted) evidence demonstrating that Defendants have not failed to address Plaintiff's HCV health conditions. Rather, Defendants have addressed Plaintiff's HCV health issues and are currently monitoring Plaintiff's condition because Plaintiff's condition currently does not require additional treatment. *See* ECF No. 34-1 ¶¶ 6, 14-16, 18-20. Indeed, Plaintiff is receiving treatment for his HCV health issues in the sense that he is being continuously seen, tested, and monitored in CCC. *See Id.* ¶¶ 14, 16, 18, 21. Plaintiff has not alleged nor offered any evidence that his condition is rapidly deteriorating or that he was previously on medication and has been completely withdrawn from that course of treatment. *See Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (finding imminent danger where plaintiff offered evidence of his rapidly deteriorating condition due to HIV and hepatitis and from being withdrawn from his previous course of medication). Nor has Plaintiff alleged nor offered any evidence that he has or is currently suffering any physical injury as a result of not receiving specific hepatitis medications. *See Skillern v. Paul*, 202 F. App'x 343, 344 (11th Cir. 2006) (determining that plaintiff's mere allegation that deprivation of medication may result in suffering serious physical injury did not constitute imminent danger). Plaintiff merely offers general assertions that he is not receiving treatment and conclusionally states that he is in imminent danger. Such conclusional allegations are insufficient to invoke the exception to § 1915(g). *See Adams v. Perry*, No. 5:13-CV-0272-CAR, 2013 WL 5439144, at *1 (M.D. Ga. Sept. 27, 2013) (*citing Sutton v. Dist. Attorney's Office*, 334 F.

App'x 278, 279 (11th Cir. 2009) (general assertions of danger absent specific fact allegations of ongoing serious injury do not satisfy the § 1915(g) exception).

In sum, consistent with the Court's authority to revisit the issue of IFP status, the record in this case demonstrates that there are no genuine issues of material fact with regard to whether the Plaintiff is in imminent danger. Plaintiff is not in imminent danger, nor was he at the time the complaint was filed. Thus, Plaintiff should not have been granted leave to proceed *in forma pauperis*. Contrary to Plaintiff's claim, his medical condition is not and has not been ignored. The situation does involve a prisoner who is not receiving any treatment. Rather, the record demonstrates without dispute that the Plaintiff's HCV health issues are being addressed in that Plaintiff is being continuously seen, tested, and monitored in CCC. Plaintiff does not dispute these facts but only conclusionally alleges that he should receive some other kind of unspecified treatment. While Plaintiff may disagree with the DOC about his treatment, the record, nonetheless, demonstrates that Plaintiff is not in imminent danger but instead is being continuously monitored and tested to insure that Plaintiff does not suffer a serious health issue as a result of HCV.

Accordingly, for these reasons, the undersigned recommends that Plaintiff's IFP status be revoked because Plaintiff cannot demonstrate that he is in imminent danger. The case should be dismissed without prejudice pursuant to the PLRA's three-strikes rule,[2] subject to the right of the Plaintiff to pay the full filing fee and re-file his case.[3]

---

[2] Although it does not appear that any court has imposed the three-strikes bar against Plaintiff yet, based on a review of the Court's PACER Case Locator, at least two of Plaintiff's previous two dozen federal district court cases and one appeal were

### III.  Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion to Revoke Plaintiff's *in forma pauperis* status, ECF No. 34, should be **GRANTED**, all pending motions terminated, and the case dismissed without prejudice.

IN CHAMBERS, at Gainesville, Florida, this 17th day of September, 2015.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

---

dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. *See* Doc. 7 at 3; *see also McLeod v. Henderson*, No. 98-1534-CIV-T-17A, 1999 WL 1427749, Doc. 32 (M.D. Fla. Nov. 13, 1998) (dismissing case pursuant to 28 U.S.C. § 1915(e)(2) and finding "Plaintiff's complaint is frivolous and without merit . . . .); *id.* Docs. 42, 43 (Eleventh Circuit orders finding that appeal is frivolous and denying Plaintiff leave to proceed in forma pauperis on appeal) (Nov. 10, 1999); *McLeod v. U.S. Dept. Of Justice*, No. 11-0958, 2011 WL 2112477 (D.C. May 24, 2011) (dismissing complaint at screening pursuant to 28 U.S.C. § 1915 A, finding that Plaintiff "has stated no claim upon which relief may be granted).

[3] Plaintiff cannot simply pay the full filing fee at this stage of his case and continue on with his current case. *See Dupree*, 284 F.3d at 1236 ("The prisoner cannot simply pay the filing fee after being denied in forma pauperis status. He must pay the filing fee at the time he initiates the suit.").

*Case No: 4:15-cv-188-RH-GRJ*